IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| MICHAEL S. GORBEY, | ) | Civil Action No. 7:16cv00551 |
|    Plaintiff, | ) | |
| | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| CAPTAIN FELPS, et al., | ) | By: Pamela Meade Sargent |
|    Defendants. | ) | United States Magistrate Judge |

Michael S. Gorbey, ("Gorbey"), a federal inmate proceeding pro se, brings this civil rights action against various Bureau of Prisons, ("BOP"), employees of the United States Penitentiary Lee, ("USP Lee"), pursuant to *Bivens v. Six Unknown Named Agents*, 403 U.S. 388, 389 (1971). His Complaint alleged that the defendants violated his due process rights by imposing a disciplinary sanction of taking away his clothes and linens without properly charging him with a disciplinary infraction. Because at least three of Gorbey's previous complaints have been dismissed with prejudice for failing to state a claim upon which relief may be granted under 28 U.S.C. § 1915A(b)(1), Gorbey may not proceed with this action unless he pays the filing fee or shows that he is under "imminent danger of serious physical injury." 28 U.S.C.A. § 1915(g) (West 2006). This matter is before the undersigned magistrate judge by referral, pursuant to 28 U.S.C. § 636(b)(1)(B), to conduct an evidentiary hearing to determine if Gorbey was under imminent danger of serious physical injury at the time he filed this action. *See Martin v. Shelton*, 319 F.3d 1048, 1050 (8th Cir. 2003). Evidentiary hearings were conducted on December 19 and 28, 2016, with Gorbey participating in person at the first hearing and by video conference at the second. The undersigned now submits the following report recommending that the court find that Gorbey was not under

-1-

imminent danger of serious physical injury at the time that he filed this action.

*I. Facts*

By Complaint filed with the court no earlier than November 17, 2016,[1] Gorbey alleged that defendants, Captain Felps, Lieutenant Avery and Lieutenant Bowles, searched his USP Lee cell on November 17 and placed him and his cellmate "on paper" by taking away their clothing and linens and replacing them with paper clothing and paper sheets. The Complaint alleged that the action of placing Gorbey "on paper" without first conducting a disciplinary hearing violated his constitutional due process and equal protection rights. *See* Complaint, (Docket Item No. 1 at 3.) The Complaint further alleged the defendants placed Gorbey "on paper" in retaliation for filing multiple administrative remedy complaints and civil actions. Complaint at 4. In the "Relief Sought" section of Gorbey's Complaint, he stated:

> I want inmates being placed on paper (without) [sic] a hearing or discipline proceeding (stop[p]ed)… immediate it violates due process or equal protection if there is no discipline hearing or timely appeal.

Complaint at 4.

---

[1] Gorbey's Complaint and application to proceed in forma pauperis were received and docketed by the court on November 22, 2016. Pursuant to the "Prison-Mailbox Rule" described in *Houston v. Lack*, 487 U.S. 266, 275 (1988), however, these items were filed with the court when they were placed by the plaintiff in the USP Lee mail system for mailing to the court. Since these documents were dated November 17, 2016, by Gorbey, and the events complained of in the Complaint did not occur until November 17, 2016, these documents could not have been mailed any earlier than November 17, 2016.

-2-

The Complaint also stated: "Being placed on paper while temperatures are below freezing … & in a [special housing unit] cell is extreme condition[,] significant [sic] hardship & an immenent [sic] danger." Complaint at 5. In an attachment to the Complaint entitled "Immenent [sic] Dangers," Gorbey wrote:

> I'm proceeding under immenent [sic] danger as I have been arguing with this court about threats to my safety, extreme conditions & significant [sic] hardships for months now & this <u>is</u> absolute proof of how USP Lee staff are abusing authorities & retaliating for my filing.
> I (demand) [sic] immediate action & relief I've already filed administrative complaints on the negligences of this court & yet you contenue [sic] to allow USP staff to keep placing me in danger, extreme conditions and to suffer significant [sic] hardships.
> Lt. Bowles has now fabrecated [sic] 7 charges on me in recent months & keeps using arbitra[r]y sanctions without discipline proceedings & abusing sanctions imposed and Lt. Avery & Captain Felps is assisting & prompting him.
> I (demand) [sic] immediate administrative action against the 3 accordingly, I fear for my safety around them & I demand their suspension from duties untill [sic] my transfer & Bowles & Avery permenently[sic].
> This court for allowing such events to contenue [sic] <u>is</u> now a part of this and also a [threat] to my safety allowing me to suffer threats, extreme conditions and significant [sic] hardships.

(Docket Item No. 1-2 at 1.) Gorbey's filing did not further describe any of these alleged threats, extreme conditions, hardships or dangers.

At the December 19 evidentiary hearing Gorbey testified that, on November 17, 2016, he told Lt. Avery that he wanted to speak to Capt. Felps about his Native American ceremonial meal. Gorbey said that Avery told him to "lay down." Gorbey said that Lt. Bowles came to his cell between 11 a.m. and noon and told

-3-

him and his cellmate, Henry A. Berrios, to "cuff up." Gorbey said that he and Berrios were taken to the recreation yard then taken to a cell where their clothing was taken, and they were given paper boxer shorts, paper shirts and paper shoes to wear. He said they also were given two paper sheets to use as bedding. They were then returned to their cell after all their clothing and linen had been removed. Gorbey said that their clothing and linens were not returned until November 21, 2016.

Gorbey testified that Bowles wrote him a false disciplinary charge for damaging his mattress, clothing and linens. Gorbey testified that his mattress was not damaged, but Berrios's mattress was damaged. He claimed it was damaged when they were moved into cell C-121 about a week earlier. Gorbey also testified that his prison issued clothing was damaged, but that it was issued to him in that condition.

Gorbey testified that, during the time he and his cellmate were in paper clothing, it was "freezing" in their cell. Gorbey stated that the temperature in their cell was only 30 degrees. He said that the air conditioning, and not the heat, was on in his cell when he was in paper clothing. Gorbey said that the window in his cell had a 3-by-1-inch hole in it that had been filled with some type of silicone substance. He said that he could feel the wind blowing in the hole around the silicone. He also said that inmates in the special housing unit often would pry the caulking from around the cell windows and use it to stick objects to their cell walls. He said that the correctional officers escorting inmates to outside recreation on Sunday, November 20, and Monday, November 21, announced that it was 27 degrees outside. Gorbey testified that he suffered from blood sugar problems and was anemic, which resulted in him being colder than a normal person. He said that

he wrote and mailed the Complaint filed in this action the night of November 17 after he had been in paper clothing between 10 to 11 hours.

Gorbey testified that, while in paper clothing, he put in two requests for sick call – one on Thursday night and another on Sunday – and he never received any medical treatment. Gorbey said that the two sick call requests that he filed were submitted to the court by mail. (Docket Item No. 22-1 at 6-7.) He said that he attempted to get medical treatment because the cold had caused an unspecified problem with some of his toes. Gorbey conceded that he was taken to the Medical Department for an optometrist examination on Friday while he was in the paper clothing, but he claimed that the medical personnel refused to examine him for his complaints of being exposed to extreme cold and told him to file a sick call request. Gorbey said that he was given a pair of paper pants when he was taken to the Medical Department.

The sick call request dated 11-18-16 complained that Gorbey's shoulder was injured when he was cuffed on November 17. It also stated:

> … I'm left on (paper) [sic] & its [sic] freezing in this cell with the [air conditioning] still going & cold outside. My toes, fingers, nose and ears have been numb. I'm conserned [sic] for my toes I have no socks. I need medical attention.

(Docket Item No. 22-1 at 6.) The sick call request dated 11-21-16, again, complained of shoulder problems, and stated:

> … I been without socks or proper shoes since 11-17-16 and it is freezing outside & in my cell. My toes are staying numb. I need medical to check my feet, hands, nose & ears. I am

-5-

> [anemic/hypoglycemic] & my blood [sugar] (drops) [sic] to conserning [sic] levels. I need immediate medical treatment.

(Docket Item No. 22-1 at 7.) Gorbey testified that, other than a problem with his toes, he did not believe that he suffered any long-lasting damage as a result of being exposed to cold temperatures while in paper clothing in November 2016.

Despite a Bureau of Prisons Health Services Clinical Encounter, which stated that Gorbey was seen by nurse practitioner P. K. Herrell for a skin problem at 1:50 p.m. on November 17, 2016, (Docket Item No. 17-2), Gorbey denied that he was seen by anyone from the Medical Department on that date.

On cross-examination, Gorbey conceded that being placed in paper clothing was not what exposed him to any danger. He said it was the fact that he was placed in paper clothing and exposed to "freezing weather" that posed a danger to him.

Jimmy K. Baker, Special Investigations Agent at USP Lee, also testified at the December 19 hearing. Baker testified that Gorbey arrived at USP Lee in June 2016 and was in the Special Housing Unit from July to November 2016 for protective custody at Gorbey's request. Baker stated that Defense Exhibit No. 1, (Docket Item No. 17-1), were photographs of the damaged clothing removed from Gorbey's cell on November 17. Baker stated that Gorbey had his clothing and linens taken from him, and he was placed on paper on November 17 because he had damaged his prison-issued clothing. Baker said that Gorbey was not placed on paper as a punishment, but, rather, to prevent further damage to prison property.

He said that the USP Lee Warden had to authorize placing an inmate on paper, and he conceded that there was no appeal allowed of the Warden's decision.

Baker testified that USP Lee correctional officers did not regulate the heat or air conditioning at the prison. This was done, he said, by the Heating, Ventilation and Air Conditioning, ("HVAC"), Department or at the prison powerhouse. Baker testified that he had never been in the special housing unit at USP Lee when the temperature was below freezing or even "unbearably cold."

Baker testified that Gorbey's prison medical records contained Defense Exhibit No. 2 showing that he was seen at his cell door by nurse practitioner Herrell for a skin complaint at 1:50 p.m. on November 17. This Clinical Encounter stated:

> Chief Complaint:  Skin Problem
> Subjective:  I have a rash on my face. I tried the hydrocortisone cream and it did not clear up….
> Exam:
>    General Appearance
>       …Appears Well, Alert and Oriented X 3

(Docket Item No. 17-2.) The note made no mention of any complaint of exposure to cold temperatures.

Ronald O. Sillmon, Facilities General Foreman at USP Lee, also testified at the December 19 hearing. Sillmon testified that he directed the day-to-day facility maintenance, including regulating the prison's heating and cooling and supervising the prison's two HVAC foremen. Sillmon testified that Defense Exhibit No. 3 set out the BOP heating and cooling policy as it was applied at USP Lee. He stated that this policy was in effect in November 2016. Sillmon testified that, according to

the BOP Building Energy Management policy, the cooling season at the prison was from May to October, and the heating season was from October to May. (Docket Item No. 17-3 at 1.) Sillmon testified that, pursuant to this policy, the heat was on in the special housing unit at USP Lee on November 17, 2016. Sillmon also testified that, pursuant to this policy, the heat at USP Lee is set at 68 degrees.

Sillmon stated that he received no complaints of low temperatures in the special housing unit in November 2016. He said that, if any complaints had been made, he would have been the person to receive them. He said that, if he had received any complaint, he could have taken instruments to a specific cell to check the temperature in that cell. Sillmon said that the temperature for each building was set at the central utility plant and that the central utility plant monitored the heating and cooling system in each building of the prison. Sillmon also testified that he did not know of there being any holes in the windows of the special housing unit cells.

The parties agreed that the court may take judicial notice of the temperatures reported by accuweather.com for nearby Jonesville, Virginia, on November 17-21, 2016. A printout of these temperatures showed that the high temperature on November 17 was 73, and the low was 30. On November 18, the high temperature was 75, and the low was 32. On November 19, the high temperature was 50, and the low was 37. On November 20, the high temperature was 45, and the low was 27. On November 21, the high temperature was 48, and the low was 19.

USP Lee inmate Sherman Houser also testified by video conference at the December 28 hearing. Houser testified that Gorbey held his mattress up to the window in his cell door and allowed him to see that his mattress was not damaged

-8-

on November 17. Houser testified that he often received damaged clothing or linens. He also said that no prison officials check the condition of the clothing before it is issued or check the conditions of the cells before inmates are placed in a cell. Houser said that he specifically remembered seeing correctional officers give Gorbey a damaged blanket on one occasion.

Houser testified that it was cold in the special housing unit when Gorbey was in paper clothing in November 2016. He said the air conditioning was running at that time and that a few of the special housing unit cell windows had small holes in them. When Gorbey asked if someone could have frozen to death in the conditions during that time, Houser responded, "I don't know about that." Houser did say that it was so cold in the special housing unit at USP Lee that he often wore both of his shirts, both pairs of pants, both pairs of socks and covered up with both of his blankets to keep warm. Houser said that his breath was visible in his cell, and his hands were numb. He conceded that he did not seek any medical attention and did not complain about the cold temperatures.

On cross-examination, Houser conceded that he signed a statement for Gorbey that Gorbey previously filed with the court. He admitted that he did not mention anything about the cold temperatures Gorbey was exposed to in November because he did not know that was an issue.

USP Lee inmate Jordan Jamar Ford also testified by video conference at the December 28 hearing. Ford stated that he remembered the day that Gorbey's cell was searched, and Gorbey was placed on paper. At first, Ford testified that he saw Gorbey's mattress and that it was damaged, then he said, "No, no, no … not damaged." Ford said that his cell was directly across from Gorbey when Gorbey

was placed on paper. He said that Gorbey held his cell mattress up to the window in his cell door and rotated it so that Ford could see that it was not damaged. Ford said that he also saw that Gorbey's clothing was damaged when it was issued to him by Bowles. When asked to describe the damage, Ford stated that Gorbey's towel had a hole in it, and both shirts issued to him were ripped around the bottom. Ford testified that he had been issued damaged linens and clothing in the past. In fact, he said that he currently had damaged linen and clothing that had been issued to him by the prison staff.

Ford testified that it was cold in the special housing unit at USP Lee on the days that Gorbey was in paper clothing. He said that it did not feel like there was any heat on. Ford said that it was cold enough that he sometimes would wear two shirts and two pairs of socks. He also agreed that there were holes in the windows of the special housing unit cells.

Ford agreed that he had provided signed statements to Gorbey prior to testifying. He would not concede that the statements filed with the court by Gorbey were the ones he had signed, however, because he said that he did include information in his statements about the "freezing temperatures." Ford admitted that he did not formally complain about cold temperatures in the special housing unit and that he did not seek any medical treatment. He also said that he did not know of any inmates who needed medical attention due to cold temperatures in the special housing unit.

Gorbey's cellmate, Berrios, also testified by video conference at the December 28 hearing. Berrios said that he and Gorbey were placed on paper because their clothing had been damaged. Berrios admitted that his mattress and

-10-

clothing had been damaged, but he claimed they were damaged when he received them. Berrios testified that he believed that they were placed on paper because Gorbey had requested to see Capt. Felps.

Berrios stated that he and Gorbey were in paper clothing for four days and that it was cold in their cell. He said their cell window had "holes" in it. Berrios testified, "I was cold. My feet and hands were real cold." He said that it was very cold in their cell the first afternoon that they were given paper clothing. Berrios said that, on November 18, he and Gorbey were taken to the recreation yard in paper clothing, but after about 5-10 minutes he and Gorbey were provided with cloth pants to wear while outside. He said, while on the recreation yard, his feet were very cold in the paper shoes.

Berrios conceded that he did not request any medical attention as a result of being in paper clothing in the cold temperatures. He also admitted that he did not suffer any lingering symptoms from being exposed to the cold temperatures. He said, however, that he did not know if he suffered from any injury as a result because he had not been examined by medical staff.

On cross-examination, Berrios admitted that he signed one or two statements on behalf of Gorbey. He said that he did not write the statements. He never answered the question of whether he had read the statements before signing them.

At one point in his cross-examination testimony, Berrios asked Gorbey how Gorbey wanted him to answer the question posed. The court admonished Berrios that Gorbey could not assist him in answering the questions posed.

-11-

USP Lee inmate Pedro Garcia also testified by video conference at the December 28 hearing. Garcia testified that he was housed in the cell next to Gorbey's in the special housing unit. Garcia testified that it was cold in the special housing unit cells. He said many of the cell windows have holes in them, and air leaks in around the windows. Garcia said that it was very cold in the special housing unit when Gorbey was in paper clothing. He said that he put on all his issued clothing, and he was still cold. Garcia said he did not get sick, but that his cellmate got sick because of the cold temperatures. Garcia testified that it was just as cold in the special housing unit on December 28 as it was when Gorbey was placed on paper. Garcia conceded, however, that he was wearing only a short-sleeved shirt when he testified by video conference from USP Lee on December 28.

Garcia also testified that, on the only occasion he had requested sick call at USP Lee, he was seen by a nurse the very next day.

Garcia admitted that he had signed statements for Gorbey in the past. He admitted that he could not read English, but he said that he had someone translate the written statements before he signed them.

*II. Analysis*

As stated above, the court has determined that at least three of Gorbey's previous complaints have been dismissed with prejudice for failing to state a claim upon which relief may be granted under 28 U.S.C. § 1915A(b)(1). Therefore, under the Prison Litigation Reform Act, ("PLRA"), Gorbey may not proceed with this action unless he pays the filing fee or shows that he is under "imminent danger

of serious physical injury." 28 U.S.C.A. § 1915(g) (West 2006). To prove that he is under imminent danger of serious physical injury, an inmate must show that the

> "conduct complained of threatens continuing or future injury, not whether the inmate deserves a remedy for past misconduct." *Martin v. Shelton*, 319 F.3d 1048, 1050 (8th Cir. 2003). Vague, speculative, or conclusory allegations are insufficient to invoke the exception of §1915(g); rather, the inmate must make "specific fact allegations of ongoing serious physical injury, or of a pattern of misconduct evidencing the likelihood of imminent serious physical injury." *Id.*

*Johnson v. Warner*, 200 F. App'x 270, 272 (4th Cir. 2006). Also, at least one Circuit Court of Appeals has held that "there must be a nexus between the imminent danger a three-strikes prisoner alleges to obtain IFP status and the legal claims asserted in his complaint." *Pettus v. Morgenthau*, 554 F.3d 293, 297 (2nd Cir. 2009). The Second Circuit in *Pettus* held that this "nexus" is established when "the prisoner's complaint seek[s] to redress an imminent danger of serious physical injury and that this danger must be fairly traceable to a violation of law alleged in the complaint." *Pettus*, 554 F.3d at 297.

Accordingly, based on the above, I recommend that the court find that Gorbey was not in imminent danger and deny Gorbey's request for IFP status for this action for two reasons. First, based on the reasoning of *Pettus*, Gorbey's Complaint does not seek to remedy the alleged imminent danger. Second, I find that Gorbey was not under imminent danger of serious physical injury at the time he filed his Complaint.

The Fourth Circuit has held that "[t]he impetus behind the enactment of the PLRA was a concern about the 'endless flood of frivolous litigation' brought by

-13-

inmates." *McLean v. United States*, 566 F.3d 391, 397 (4th Cir. 2009) (quoting 141 CONG. REC. S14,418 (1995). "'To accomplish its goal of reducing the number of frivolous lawsuits,' Congress imposed on prisoners, among other hurdles, the three-strikes limitation to proceeding in forma pauperis." *Blakely v. Wards*, 738 F.3d 607, 613-14 (4th Cir. 2013) (quoting *Green v. Young*, 454 F.3d 405, 406-07 (4th Cir. 2006). The undersigned is of the opinion, however, that the legislative purpose of the PLRA cannot be achieved if the three-strikes limitation would allow an inmate to proceed in forma pauperis on *any* claim as long as he is under *any* imminent danger of serious physical injury. In *Pettus*, the Second Circuit reasoned that "the imminent danger exception is designed to provide 'a safety valve for the "three strikes" rule.' … Its unmistakable purpose is to permit an indigent three-strikes prisoner to proceed IFP in order to obtain a judicial remedy *for an imminent danger*." 554 F.3d at 297 (citations omitted) (emphasis added). To hold otherwise, the *Pettus* court reasoned, "an indigent prisoner with a history of filing frivolous complaints could, by merely alleging an imminent danger, file an unlimited number of lawsuits, paying no filing fee, for anything from breach of a consumer warranty to antitrust conspiracy." 554 F.3d at 297. Based on this reasoning, I hold that that the imminent danger exception to the three-strike rule requires that the prisoner's complaint seeks to redress the imminent danger alleged.

I further find that Gorbey's Complaint does not seek to redress the imminent danger alleged. Gorbey's Complaint alleges that he was under imminent danger of serious bodily injury at the time he filed his Complaint from being placed in paper clothing in "freezing" temperatures. *See* Complaint at 1. Gorbey's Complaint, no matter how liberally construed, however, does not seek to redress the danger posed by an inmate being placed in paper clothing in cold prison conditions. Instead, Gorbey's Complaint specifically seeks a ruling that placing an inmate in paper

clothing without first convicting the inmate of a disciplinary infraction violates the inmate's due process rights. *See* Complaint at 4. At his hearing, Gorbey, himself, admitted that he was not exposed to any danger of serious bodily injury by being placed in paper clothing. The danger, he claimed, was posed by being exposed to extremely cold temperatures while dressed in paper clothing.

While I believe this parsing of Gorbey's allegations is required under the PLRA three-strikes rule, I also recommend that he should not be allowed to proceed in forma pauperis because I find that he was not under an imminent danger of serious bodily injury at the time of the filing of the Complaint. While Gorbey and his inmate witnesses testified that he was subjected to extreme cold temperatures while he was in paper clothing, I am not persuaded that this was the case. I find more persuasive the testimony of the prison's Facilities General Foreman Sillmon. Sillmon testified that the heating and cooling system at USP Lee was operated according to BOP policy. Under BOP policy, he said, the heating season at USP Lee was from October to May. Sillmon testified that, pursuant to this policy, the heat, and not the air conditioning, was on in the special housing unit at USP Lee on November 17, 2016. Sillmon also testified that, pursuant to this policy, the heat at USP Lee is set at 68 degrees. While being in paper clothing in a building maintained at or near 68 degrees might be uncomfortable, I have no evidence before me that this would pose any imminent danger of serious bodily injury to anyone.

I note that one of Gorbey's inmate witnesses, Garcia, testified that the temperature in the special housing unit at USP Lee was the same on December 28 as it was when Gorbey was placed in paper clothing. He further admitted that he was wearing only a short-sleeved shirt when he testified on December 28. Also,

-15-

the testimony of Berrios, insofar as it can be given any credit in light of hearing events, established that he did not seek any medical treatment or suffer from any lingering symptoms as a result of being in paper clothing from November 17 to 21. Furthermore, the evidence shows that the temperature in nearby Jonesville rose to a high of 73 degrees on November 17, the date that Gorbey filed his Complaint.

I also am persuaded that Gorbey was seen by medical personnel on November 17, as reflected in the Clinical Encounter note from nurse practitioner Herrell admitted as Defense Exhibit No. 2. According to this evidence, Gorbey appeared well and made no complaint of exposure to cold temperatures.

Based on this evidence, I find that Gorbey was not exposed to extremely cold temperatures while in paper clothing on November 17-21, 2016. Therefore, I find that he was not under an imminent danger of serious bodily injury when he filed his Complaint on November 17.

I further note that Gorbey's Complaint, as well as his testimony, contained numerous unspecified allegations of threats and retaliation he claimed he has suffered, and fears suffering in the future, at the hands of the defendants and other BOP employees. Such unsupported, vague, self-serving conclusory allegations, however, are not sufficient to show that a plaintiff is, in fact, in imminent danger of serious bodily injury. *See Merriweather v. Reynolds*, 586 F. Supp. 2d, 548, 552 (D. S.C. 2008).

### PROPOSED FINDINGS OF FACTS AND CONCLUSIONS OF LAW

As supplemented by the above summary and analysis, the undersigned now

submits the following formal findings, conclusions and recommendations:

1. Gorbey's Complaint does not seek to remedy the imminent danger he alleged to gain IFP status; and
2. Gorbey was not under an imminent danger of serious physical injury at the time he filed his Complaint.

## RECOMMENDED DISPOSITION

For the reasons stated above, I recommend that the court find that Gorbey was not under imminent danger of serious physical injury and deny his application to proceed in forma pauperis.

## Notice to Parties

Notice is hereby given to the parties of the provisions of 28 U.S.C. § 636(b)(1)(C):

> Within fourteen days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Failure to file written objection to these proposed findings and recommendations within 14 days could waive appellate review. At the conclusion of the 14-day period, the Clerk is directed to transmit the record in this matter to the Honorable Jackson L. Kiser, Senior United States District Judge.

The Clerk is directed to send copies of this Report and Recommendation to all counsel of record and unrepresented parties.

DATED: This 6th day of January, 2017.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE